# EXHIBIT "A"

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Northern District of New York | PROOF OF CLAIM |
|---|---|

Name of Debtor: EVIDENT TECHNOLOGIES, INC.

Case Number: 09-12515-1-

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Nanosys, Inc.

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Nanosys, Inc.
2625 Hanover Street
Palo Alto, CA 94304-1148

**RECEIVED & FILED**
**SEP 01 2009**
**OFFICE OF THE BANKRUPTCY CLERK**
**ALBANY, NY**

Court Claim Number: _____
(If known)

Telephone number:

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

1. Amount of Claim as of Date Case Filed:   $ **SEE ATTACHED**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **PATENT VIOLATION**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

3a. Debtor may have scheduled account as: **NANOSYS, INC**
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 8/18/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

**John Hansen**
**SR VP FINANCE**

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

035689                            68804035724021

B10 (Official Form 10) (12/08) - Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number; all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

---

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

---

nanosys

Evident Technologies, Inc.
Case No. 09-12515, Chapter 11, Albany

Nanosys, Inc's claim for relief from Evident :

$350k upfront and 3 to 5% ongoing royalty for non-exclusive license for low power LED's for decorative lighting applications.

$30 Million payable over three years ($10 Million upfront) and 15% ongoing royalty for non-exclusive license for all LED's for any lighting applications.

## NON-EXCLUSIVE PATENT LICENSE AGREEMENT

This Non-Exclusive Patent License Agreement ("Agreement"), effective as of January 1, 2009 (the "Effective Date"), is by and between Nanosys, Inc. ("Nanosys"), a corporation with an address at 2625 Hanover Street, Palo Alto, CA 94303 and Evident Technologies, Inc., having an address of 45 Ferry Street, Troy, NY 12180 ("Evident") (each a "party" and collectively the "parties").

## RECITALS

WHEREAS, Nanosys is the owner of certain Patent Rights (as defined herein) and has the right to grant licenses under such Patent Rights; and

WHEREAS, Nanosys desires to license the Patent Rights to Evident and Evident desires to obtain a license under the Patent Rights upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, Nanosys and Evident hereby agree as follows.

1. **Definitions.**

"Affiliate" shall mean any legal entity (such as a corporation, partnership, or limited liability company) which directly or indirectly controls, is controlled by, or is under common control with Evident or its successors or assigns, or any successor or assign of such an entity. For the purposes of this definition, the term "control" means (i) beneficial ownership of at least fifty percent (50%) of the voting securities of a corporation or other business organization with voting securities or (ii) a fifty percent (50%) or greater interest in the net assets or profits of a partnership or other business organization without voting securities.

"Combined Field" shall mean Field A and/or Field B as both defined further below.

"Field A" shall mean "Low Power" light emitting diodes (LED's) including one or more quantum dot phosphor materials for decorative lighting applications, wherein "Low Power" means that the LED's are only capable of being driven by 100mA or less of input current. The licensed Field specifically excludes the use of the Patent Rights for LED–based backlights (e.g., for computers, mobile displays, LCD displays etc. using side-emitting or frontplane LED's), electronic, color, digital, and LED message displays, emissive displays, general illumination and residential and commercial downlights and bulbs for lighting applications.

"Field B" shall mean "Low Power" light emitting diodes (LED's) including one or more quantum dot phosphor materials, wherein "Low Power" is defined as per the terms of the non-exclusive patent license agreement between Evident and Phillips Corporation [**Evident to supply specific FOU language from such license agreement**].

"Licensed Product" shall mean a commercially launched product, process or service thereof in the Combined Field that, absent the license granted hereunder, would infringe one or more claims of the Patent Rights.

1

"Net Sales" shall mean in the case of a sale of a Licensed Product sold by Evident, the bona fide selling price of each Licensed Product after deducting: (i) prompt payment discounts and quantity discounts actually allowed; and where applicable, (ii) all packing, transportation and insurance charges, import, export, excise, sales and value added taxes (collectively, the "Additional Deductions") provided such Additional Deductions are separately invoiced at the time of such sale.

"Licensed Patents A" shall mean all the patents and patent applications exclusively licensed by Nanosys listed in Appendix A attached hereto, as well as all foreign counterpart patents and patent applications thereto; and all reissues, reexaminations, renewals, extensions, divisionals, and continuations which claim priority to any of the foregoing.

"Licensed Patents B" shall mean all the patents and patent applications exclusively licensed by Nanosys listed in Appendix B attached hereto [**Evident to include specific list of patents licensed from Phillips for Appendix B**], as well as all foreign counterpart patents and patent applications thereto; and all reissues, reexaminations, renewals, extensions, divisionals, and continuations which claim priority to any of the foregoing.

"Sublicense Payments" means amounts paid by sublicensees of the Licensed Patents A and/or B to Evident other than royalty payments on Net Sales by such sublicensees (for which Evident shall pay Nanosys a pass-through royalty of four percent (4%) as specified herein) received by Evident or its Affiliates from a grant, directly or through other third parties, of a sublicense under the Licensed Patents A and/or B, including but not limited to license fees, milestone payments and the fair market value in cash of any non-cash consideration for such sublicense, but specifically excluding payments made to reimburse Evident for its costs of ongoing research and development of Licensed Products.

2. **Grant of Rights.**

2.1 License Grants. Subject to the terms of this Agreement, Nanosys hereby grants to Evident a personal, non-assignable, non-exclusive, royalty-bearing, worldwide right and license under the Licensed Patents A (with a limited right to sublicense as set forth below) under the Licensed Patents A in the Field A:

(a) to make, use, copy, modify, lease, sell, offer to sell, import, export, and otherwise distribute or have distributed Licensed Products, and to practice any method or process and use any product involved in the manufacture or use thereof throughout the world; and

(b) to have made Licensed Products by another manufacturer for the use, lease, sale, offer for sale, import, export or other transfer by Evident, provided that the specifications or designs for such Licensed Products were either created or developed by Evident (either solely or jointly) or that the Licensed Products shall only be under claims of the Licensed Patents A, the infringement of which would be necessitated by compliance with such specifications or designs. Upon written request, Evident agrees to inform Nanosys whether, and to what extent, any manufacturer identified by Nanosys is operating under the license granted in this Section.'

2.2 License Grants. Subject to the terms of this Agreement, Nanosys hereby grants to Evident a personal, non-assignable, non-exclusive, royalty-bearing, worldwide right and license

under the Licensed Patents B (with a limited right to sublicense as set forth below) under the Licensed Patents B in the Field B:

    (a) to make, use, copy, modify, lease, sell, offer to sell, import, export, and otherwise distribute or have distributed Licensed Products, and to practice any method or process and use any product involved in the manufacture or use thereof throughout the world; and

    (b) to have made Licensed Products by another manufacturer for the use, lease, sale, offer for sale, import, export or other transfer by Evident, provided that the specifications or designs for such Licensed Products were either created or developed by Evident (either solely or jointly) or that the Licensed Products shall only be under claims of the Licensed Patents B, the infringement of which would be necessitated by compliance with such specifications or designs. Upon written request, Evident agrees to inform Nanosys whether, and to what extent, any manufacturer identified by Nanosys is operating under the license granted in this Section.'

    2.3    Limitations; Sublicenses.

    (a)    General Limitations. No license is granted by Nanosys either directly or by implication, estoppel, or otherwise other than under the Licensed Patents for Field A and Licensed Patents for Field B; or with respect to any item other than Licensed Products.

    (b)    No Sublicenses to Third Parties. Except as set forth below, nothing in this Agreement shall either expressly or impliedly give Evident the right to grant sublicenses under the Licensed Patents for Field A and Field B to third parties. At all times, Nanosys retains the right to enforce its intellectual property rights against third parties for the infringement of any Licensed Patents for Field A and for Field B.

    (c)    Permitted Sublicense. The licenses granted under this Section include the right of Evident to sublicense distributors and third party manufacturers of the Licensed Products. For such third party to be sublicensed hereunder, (a) such third party shall agree in writing to be bound by the terms and conditions of this Agreement as if it were named herein in the place of Evident; (b) the sublicense shall also include license rights to all patents or patent applications owned or controlled by Evident; and (c) Evident shall pay Nanosys 25% of any Sublicense Payments that Evident and its Affiliates receive from such sublicensees.

    2.4    Ownership Rights. Evident hereby acknowledges and agrees that all rights, title and interest in and to the Licensed Patents are the sole and exclusive property of Nanosys and that Evident's rights under the Licensed Patents arise only out of the license granted by this Agreement and are subject to the superior rights of Nanosys.

**3.    Fees, Royalties and Payment Terms.**

    3.1    Upfront License Fee. Evident shall pay to Nanosys an upfront license fee of three hundred and fifty thousand dollars ($350,000.00 US Dollars) within ten (10) days after execution of this Agreement. Such license fee shall be non-refundable.

    3.2    Running Royalties. Evident and its Affiliates and sublicensees shall pay to

Nanosys a patent running royalty rate of four percent (4.0%) on Net Sales of Licensed Products sold by Evident, its Affiliates or sublicensees.

3.3 Accruals. Royalties shall accrue when a Licensed Product with respect to which royalty payments are required by this Agreement is first sold or otherwise transferred, or first used or leased by or for Evident or their sublicensees.

3.4 US Currency; Taxes. Evident shall pay all royalties and other payments due hereunder in United States currency clear of and without deduction or deferment for any demand, set-off, counter claim or other dispute. Without limiting the generality of the aforesaid, all payments due by Evident shall be paid in full without deduction of taxes or other fees which may be imposed by any government, which taxes or other fees shall be paid by Evident.

3.5 Payment Terms. Within thirty (30) days after the end of each calendar quarter, Evident shall provide Nanosys a royalty statement of all units of Licensed Products sold during the prior quarter ("Royalty Statement") along with the royalty accrued pursuant to this Section and pay to Nanosys all unpaid royalties accrued during such calendar quarter. Evident's royalty statement for the calendar quarter ending June 30, 2009 shall also include royalties accrued for the calendar quarter ending March 31, 2009. Such royalty statements shall also include a summary of the amount of funding by Evident in each such calendar quarter spent on research and/or development of technology reasonably necessary for the commercial viability of Licensed Products and improvements thereto. The Royalty Statement shall be sent to Nanosys to the address provided below in Section 11.2 below and sent to the attention of John Hanlon, CFO of Nanosys, or other person designated by Nanosys.

3.5 Late Payments. Any payments due from Evident that are not paid on the date such payments are due under this Agreement shall bear annual interest at the lesser of (a) the 6 month LIBOR rate on the date such payment is due, plus an additional four percent (4%), or (b) the maximum rate permitted by applicable law, in each case calculated on the number of days such payment is delinquent. This Section 3.5 shall in no way limit any other remedies available to any party.

3.6 Records. Evident, and each of its sublicensees, shall keep records in sufficient detail to permit the determination of royalties payable hereunder and at the request and expense of Nanosys will permit an independent auditor selected by Nanosys, or any other person acceptable to both Nanosys and Evident, to examine, during ordinary business hours once in each calendar year, such records and other materials as may be required by the auditor to verify or determine royalties paid or payable under this Agreement. Such auditor or other person shall be instructed to report to Nanosys only the amount of royalties due and payable. If an audit identifies a shortfall in the amount of the royalties paid to Nanosys, then Evident agrees to immediately pay to Nanosys the amount of any such shortfall and to reimburse Nanosys for the costs it has incurred in relation to such audit.

4. Warranties; Disclaimer.

4.1 Limited Warranties.

(a) <u>Mutual Warranty</u>. Each party hereby represents and warrants that it has the full right and power to grant the licenses and immunities, respectively set forth in this Agreement, and that there are no outstanding agreements, assignments, or encumbrances inconsistent with the provisions of this Agreement. Each party hereto warrants and represents to the other that its execution hereof has been duly authorized by all necessary corporate action of such party.

(b) <u>Exclusions</u>. Nothing in this Agreement shall be construed as: (i) an admission, warranty or representation by either party as to the validity, enforceability or infringement of any of the Licensed Patents; (ii) a warranty or representation by either party that anything made, used, sold, leased, sold, imported, exported or otherwise transferred under this Agreement is or will be free from infringement of patents or other intellectual property rights of third parties except as provided herein; (iii) a requirement that either party shall file any patent application, secure any patent or maintain any patent in force; (iv) an obligation of either party to bring or prosecute any actions or suits against third parties for infringement of any Licensed Patents or to defend any suit or action brought by a third party which challenges or concerns the Licensed Patents or the use of any of the technology referred to or claimed by any of the Licensed Patents; (v) an obligation of either party to furnish any manufacturing or technical information, or any information concerning pending patent applications; (vi) a license by either party to the other of any know-how or trade secrets; or (vii) except as expressly set forth in this Agreement, conferring any right to use in advertising, publicity, or other promotional activities any name, trade name, trademark or other designation of either party without the written consent of the other party.

4.2 <u>Warranty Disclaimer</u>. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, NANOSYS HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## 5. Term and Termination.

5.1 <u>Term</u>. This Agreement shall commence on the Effective Date and remain in effect until the expiration or abandonment of all issued patents and filed patent applications within the Licensed Patents, unless earlier terminated in accordance with the provisions of this Agreement.

5.2 <u>Termination for Convenience by Evident</u>. Evident shall have the right to terminate this Agreement, for any or no reason, upon thirty (30) days prior written notice to Nanosys; after which period Evident shall have no further obligations to make payments under this Agreement. Notwithstanding, Evident shall (a) maintain the right to sell or otherwise dispose of any Licensed Products which have been placed on order through the date of such termination and (b) pay Nanosys any royalties owed for the sale of such Licensed Products.

5.3 <u>Termination for Breach</u>. If this Agreement is materially breached by either party, the non-breaching party may elect to give the breaching party written notice describing the alleged breach. If the breaching party has not cured such breach within ninety (90) days after receipt of such notice, the notifying party will be entitled, in addition to any other rights it may have under this Agreement, to terminate this Agreement and the rights and licenses hereunder.

5

5.4    Termination by Nanosys. If Evident shall: (i) institute a patent infringement action against Nanosys under any one or more of Evident's patents, and/or (ii) institute an invalidity suit, nullity action, opposition to grant, reexamination, or other legal action in any country, seeking to invalidate or otherwise challenge the claims of a Licensed Patent, or actively participate (other than by legal compulsion) in any of the foregoing, during the Term of this Agreement, then Nanosys shall have the right to immediately terminate this Agreement upon written notice to Evident.

5.5    Survival. No termination or expiration shall release either party hereto from any liability which at the time of such termination or expiration has already accrued to the other party. Sections 1, 4, 5.5, 6, 7, 8, 9 and 10 shall survive any expiration or termination of this Agreement in accordance with its terms. The sublicenses granted herein shall survive any termination of any licenses between Nanosys and its licensors and in the event of such termination, such agreement shall automatically be assigned to such licensor.

5.6    Sublicenses. Upon any termination of this Agreement, any sublicense validly granted by Evident hereunder shall survive, provided that upon request by Nanosys, each sublicensee promptly agrees in writing to be bound by the applicable terms of this Agreement.

6.    **Indemnification; Limitation of Liability.**

6.1    Indemnification. Evident shall be solely responsible for any and all third party claims relating to patent infringement arising out of or in connection with the development, manufacture, use, lease, offer for sale, sale, importation, exportation, distribution or other transfer or exploitation of any Licensed Products. Evident shall defend (upon request) and indemnify Nanosys, its agents and employees, against, and hold them harmless from, any and all liabilities, claims, demands, causes of action or damages, including reasonable attorneys' and experts' fees ("Claims"), arising out of (a) the development, manufacture, importation, offer for sale, sale, distribution, use or other exploitation of the Licensed Products, or (b) any breach of Evident's obligations under this Agreement.

6.2    Limitation of Liability. IN NO EVENT SHALL NANOSYS BE LIABLE TO EVIDENT FOR SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL LOSS OR DAMAGES OF ANY NATURE WHATSOEVER CONNECTED WITH OR RESULTING FROM THE PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO DAMAGES OR CLAIMS IN THE NATURE OF LOST REVENUE, INCOME OR PROFITS OR LOSS OF USE, OR LOST BUSINESS OPPORTUNITY, IRRESPECTIVE OF WHETHER SUCH DAMAGES ARE REASONABLY FORESEEABLE AND REGARDLESS OF WHETHER NANOSYS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR NOT. IN NO EVENT SHALL NANOSYS'S TOTAL LIABILITY ARISING FROM THIS AGREEMENT EXCEED THE PAYMENTS RECEIVED FROM EVIDENT FOR THE TWELVE (12) MONTH PERIOD PRECEEDING SUCH CLAIM.

7.    **Confidentiality; Press Release.**

7.1     Confidentiality. Each party agrees that any confidential or business information disclosed in the furtherance of this Agreement including without limitation the terms (but not the existence) of this Agreement shall be held in strict confidence and shall not be disseminated or disclosed without the express written consent of the other party. If a party is directed to disclose any materials proprietary to the other party in conjunction with a judicial proceeding, arbitration, or otherwise by law, then the party so directed may do so provided that it shall notify the other party both in writing and orally immediately. This provision will survive the expiration or termination of this Agreement.

7.2     Press Release. Neither party may issue a press release without the prior written consent of the other party, and the content of any such press release shall be mutually agreed upon by Nanosys and Evident. If the parties mutually agree to issue a press release, the press release may announce the execution of a license between Nanosys and Evident, but not the terms of such license.

**8.     Prosecution and Litigation.**

8.1     Prosecution by Nanosys. Nanosys has the sole and exclusive right in Nanosys's absolute discretion to exercise complete control over the Licensed Patents, including but not limited to, the right to apply for, prosecute, cause the issuance, amendment, abandonment, maintenance, re-examination or re-issue of any of the Licensed Patents. Nanosys shall have the sole and exclusive right, but not the obligation, to file for patents covering any of the Licensed Patents licensed hereunder for which a patent application has not already been filed.

8.2     Infringement. Each party agrees to provide written notice to the other party promptly after becoming aware of any infringement or alleged infringement of or validity challenges to the Licensed Patents in the Field. Such notifying party shall provide the other party with any available evidence of such infringement or alleged infringement.

8.3     Marking. Evident agrees to make commercially reasonable efforts to mark the Licensed Products with the numbers of applicable issued patents within the Licensed Patents, unless such marking is commercially infeasible in accordance with normal commercial practices in the Field, in which case the parties shall cooperate to devise a commercially reasonable alternative to such marking.

**9.     Dispute Resolution.**

9.1     Mandatory Procedures. The parties agree that any dispute arising out of or relating to this Agreement shall be resolved solely by means of the procedures set forth in this Section, and that such procedures constitute legally binding obligations that are an essential provision of this Agreement. If either party fails to observe the procedures of this Section, as may be modified by their written agreement, the other party may bring an action for specific performance of these procedures in any court of competent jurisdiction.

9.2     Mediation. In the event any dispute arising out of or relating to this Agreement remains unresolved within sixty (60) days from the date the affected party informed the other party

of such dispute, it shall be finally decided by arbitration under the Rules of the American Arbitration Association (AAA) by three arbitrators appointed in accordance with said Rules. The Arbitration shall be in Santa Clara County or such other location serviced by the AAA which is mutually acceptable to the parties. The award rendered by the arbitrator(s) shall be final and binding upon the parties. The parties hereby waive any rights to appeal or to review such award by any court or tribunal. The parties agree that the arbitral award may be enforced against the parties or their assets wherever they may be found and that a judgment upon the arbitral award may be entered in any court having jurisdiction.

10. **Miscellaneous.**

    10.1    <u>Assignment</u>. Neither party may assign or transfer this Agreement or any rights or obligations under this Agreement, whether voluntary or by operation of law, without the prior written consent of the other party, except in connection with any merger, acquisition or sale of all or substantially all of the assets or business relating to this Agreement. Any sale of the Licensed Patents shall be subject to the non-exclusive patent rights granted herein. Subject to the foregoing, this Agreement shall be binding on and inure to the benefit of the parties' respective successors and permitted assigns.

    10.2    <u>Notice</u>. Any notices required or permitted under this Agreement shall be in writing, shall specifically refer to this Agreement, and shall be sent by hand, recognized national overnight courier, confirmed facsimile transmission, confirmed electronic mail, or registered or certified mail, postage prepaid, return receipt requested, to the addresses listed below. All notices under this Agreement shall be deemed effective upon receipt. A party may change its contact information immediately upon written notice to the other party in the manner provided in this Section.

| If to Nanosys: | If to Evident: |
|---|---|
| Nanosys, Inc. | Clint Ballinger |
| 2625 Hanover Street | Chief Executive Officer |
| Palo Alto, CA 94304 | Evident Technologies, Inc. |
| Attention: General Counsel and | 45 Ferry Street, |
| Vice-President of Intellectual Property | Troy, NY 12180 |
| Telephone: (650) 331-2176 | |
| Facsimile: (650) 331-2101 | |

    10.3    <u>Governing Law; Jurisdiction</u>. This Agreement and all disputes arising out of or related to this Agreement, or the performance, enforcement, breach or termination hereof, and any remedies relating thereto, shall be construed, governed, interpreted and applied in accordance with the laws of the state of California, without regard to conflict of laws principles, except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent shall have been granted.

    10.4    <u>Amendment and Waiver</u>. This Agreement may be amended, supplemented or otherwise modified only by means of a written instrument signed by both parties. Any waiver of any rights or failure to act in a specific instance shall relate only to such instance and shall not be

construed as an agreement to waive any rights or fail to act in any other instance, whether or not similar.

      10.5    <u>Severability</u>. In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason, such invalidity or unenforceability shall not affect any other provision of this Agreement, and the parties shall negotiate in good faith to modify the Agreement to preserve (to the extent possible) their original intent.

      10.6    <u>Headings</u>. All headings are for convenience only and shall not affect the meaning of any provision of this Agreement.

      10.7    <u>Entire Agreement</u>. This Agreement including its Exhibits constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, oral or written, between the parties relating to its subject matter.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**Evident Technologies, Inc.**

By: _____
Name: _____
Title: _____
Date: _____

**Nanosys, Inc.**

By: _____
Name: _____
Title: _____
Date: _____