UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

      EVIDENT TECHNOLOGIES, INC.,

                       Debtor.
_____

Case No. 09-12515

Chapter 11

# FIRST AMENDED
# DISCLOSURE STATEMENT

I.

INTRODUCTION

The Debtor, Evident Technologies, Inc., as and for its First Amended Disclosure Statement, as required under 11 U.S.C. §1125, makes the following disclosure to creditors as part of its solicitation for approval of its proposed Reorganization Plan.

On July 6, 2009 (the "Petition Date"), Evident Technologies, Inc. (hereinafter referred to as the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy filing was prompted by the institution of judgment enforcement actions against the Debtor, including freezing its bank accounts. Total debt as of the filing date included the secured bank debt of approximately $3,700,000.00, approximately $1,050,000.00 on general unsecured debt, and preferred stock claims, a pending patent lawsuit brought by Invitrogen Corporation and a second threatened patent lawsuit for which a proof of claim in the amount of $30,350,000.00 has been filed by Nanosys, Inc.

At the commencement of the case, the Debtor obtained Debtor-in-Possession financing from certain Debtor-In-Possession Lenders pursuant to that certain Priority Term Facility Credit and Security Agreement in the aggregate principal amount of $2,700,000.00 (the "Priority Term Facility Agreement") consisting of both a (1) senior secured debtor-in-possession new money priority term loan facility in the principal amount of $1,350,000.00 (the "New Money Term Loan"); and (2) a senior secured debtor-in-possession roll-up loan facility in the principal amount of $1,350,000.00 (the "Roll-Up Loan"), and approval to use cash collateral. The Final Order approving the Priority Term Facility Agreement and authorizing use of cash collateral was entered on September 14, 2009. At the final hearing on Debtor's application for the approval of the Debtor-in-Possession Financing, the Court found that there was no financial institution prepared to offer conventional financing to Debtor, that Debtor had conducted lengthy negotiations with the Debtor-in-Possession Lenders regarding the terms and the conditions of the Debtor-in-Possession Financing and that Debtor had also obtained a commitment for exit financing from the Debtor-in-Possession Lenders (the "Exit Facility").

The Debtor does not have sufficient revenue to meet operating expenses and cannot repay the Debtor-in-Possession loan. Accordingly, the Debtor proposes to reorganize by paying $100,000.00 to unsecured creditors to be distributed *pro rata* on the Effective Date of the Plan, cancelling all pre-petition stock, and issuing new shares of stock as provided in the Debtor-in-Possession Financing as follows: 85% of ownership in the Reorganized Debtor to the Debtor-in-Possession Lenders in proportion to their respective percentage of the Roll-Up Loans ("Roll-Up Lenders") and 5% ownership in the Reorganized Debtor to senior secured pre-petition lenders, in satisfaction of their pre-petition and post-petition secured claims, or in the case of the Debtor-in-Possession Lenders, the remaining portion of their pre-petition and post-petition secured claims

2

not included in the Priority Term Facility Agreement. A schedule showing the post-confirmation ownership is annexed hereto as Exhibit "A".

Before the Debtor's Plan may be approved ("Confirmed") by the Bankruptcy Court, the Bankruptcy Code requires that it must be submitted to certain creditors and security holders for a vote. Depending on your treatment under the Plan, you are being asked to indicate on the enclosed ballot whether you are in favor of (accept) or opposed to (reject) the Plan. More detailed voting instructions are contained in Section I.A. below, as well as on the enclosed ballot.

The Bankruptcy Code requires that each creditor or security holder whose vote is solicited receives a Disclosure Statement which contains information of a kind, and in sufficient detail, that would enable a reasonable investor to make an informed judgment about the Plan ("Adequate Information"). This First Amended Disclosure Statement (the "Disclosure Statement") has been approved by Order of the Bankruptcy Court, dated _____, 2010, as containing Adequate Information to enable you to make an informed judgment about the Accompanying Plan.

This Disclosure Statement does not reflect any events which may occur subsequent to the date it was approved by the Bankruptcy Court. It is not anticipated that any amendments or supplements to the Disclosure Statement will be distributed to reflect changes subsequent to that date.

This Disclosure Statement describes the Plan and contains information concerning the history, business, results of operations, management, properties, liabilities and pending litigation of the Debtor. THE DEBTOR STRONGLY URGES THAT YOU CAREFULLY REVIEW THE CONTENTS OF THIS DISCLOSURE STATEMENT, THE PLAN, AND THE OTHER DOCUMENTS WHICH ARE EXHIBITS HERETO, BEFORE VOTING TO ACCEPT OR

057295/00000 Litigation 7235709v2

REJECT THE PLAN. Particular attention should be directed to the provisions of the Plan affecting or impairing the rights of creditors and security holders.

Your vote on the Plan is important. Although the Plan may, if certain legal requirements are met, be Confirmed regardless of its acceptance by creditors and security holders, non-acceptance may impede or delay confirmation of the Plan and the distribution to creditors and security holders which is contemplated thereunder, or lead to confirmation of another plan which may or may not provide for distribution of as much value, or as soon, as does the Plan.

A.     VOTING INSTRUCTIONS

Included in the package of materials forwarded to you along with this Disclosure Statement and the Plan is a Ballot form for your acceptance or rejection of the Plan. After reviewing this Disclosure Statement and Plan, please indicate your vote on the enclosed ballot and return it.

Ballots should be returned to:

> Richard L. Weisz, Esq.
> Hodgson Russ LLP
> 677 Broadway, Suite 301
> Albany, New York  12207

BALLOTS MUST BE RECEIVED ON OR BEFORE _____, 2010 AT  5:00 P.M.

THE DEBTOR BELIEVES THAT ITS PLAN PROVIDES THE BEST POSSIBLE RECOVERIES FOR THE CREDITORS. THE DEBTOR FURTHER BELIEVES THAT THE ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND ASKS THAT THEY VOTE TO ACCEPT THE PLAN.

THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. IT IS THEREFORE RECOMMENDED THAT ALL CREDITORS AND OTHER

057295/00000 Litigation 7235709v2

PARTIES IN INTEREST REVIEW THE FULL TEXT OF THE PLAN PRIOR TO DETERMINING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. A copy of the Plan is annexed hereto.

B.  <u>GENERAL DESCRIPTION OF THE PLAN</u>

The specific technical aspects of classification of claims and interests, payment of claims, the risks to the estate, a comparison of proposed payments under the Plan as compared to the liquidation of the Debtor's assets under applicable Bankruptcy Code provisions, and consequences of Plan confirmation are set forth hereafter at length.

057295/00000 Litigation 7235709v2

## C.     <u>SUMMARY GUIDE TO CLASSIFICATION OF CLAIMS AND INTERESTS</u>

| <u>Class</u> | <u>Description</u> |
| --- | --- |
| Class 1 | Attorneys' and accountants' fees and other claims allowed in accordance with Sections 503(b) and 507(a)(1) of the Bankruptcy Code; |
| Class 2 | Secured Claims of Debtor-in-Possession Lenders converting Roll-Up Loans into stock in the Reorganized Debtor (i.e Roll-Up Lenders); |
| Class 3 | Secured Claims of Pre-Petition Secured Lenders; |
| Class 4 | Claims of General Unsecured Creditors; |
| Class 5 | Claims of Shareholders. |

057295/00000 Litigation 7235709v2

The total Projected Distribution under the Plan of Reorganization is as follows:

| Class | Estimated Distribution as % of Allowed Claim | Method of Payment |
|---|---|---|
| Class 1 | 100% | Paid on the Effective Date of the Plan; |
| Class 2 | 100% | Paid in stock in Reorganized Debtor, equal to 85% ownership[1], as set forth in Exhibit "A" annexed hereto. Shares will be issued within ninety (90) days of the Effective Date of the Plan; |
| Class 3 | 20% | Paid in stock in Reorganized Debtor, equal to 5% ownership [1], as set forth in Exhibit "B" annexed hereto. Shares will be issued within ninety (90) days of the Effective Date of the Plan; |
| Class 4 | 10% | Paid within ninety (90) days of the Effective Date of the Plan; |
| Class 5 | 0% | All pre-petition stock will be cancelled and new stock issued to Class 2 and Class 3 claims and the Backstop Lenders as set forth in Exhibit "A" annexed hereto. |

---

[1]  Certain Debtor-in-Possession Lenders agreed to backstop any shortfall in the post-petition lending by funding the debtor-in-possession loan in excess of their respective commitment percentages (based on each Debtor-in-Possession Lender's pro-rata share of the pre-petition secured loan) (the "Backstop Lenders"). Pursuant to Section 2.9(b) of the Priority Term Facility Credit and Security Agreement, the Backstop Lenders were to be paid an Equity Fee on the Approved Plan Consummation Date equal to Ten Percent (10%) of the New Common Stock of the Reorganized Borrower on a fully diluted basis after giving effect to all New Common Stock issued on such date.

057295/00000 Litigation 7235709v2

## II.

## BACKGROUND

The Debtor has conducted research in nanotechnology and developed patents and obtained licenses for other patents. It developed a commercially radiant light-emitting diode Christmas tree bulb based on nano technology. It has licensed eBioscience for nano-system bioscience matters. It is developing other LED products and thermoelectric designs. However, the Debtor's commercialization efforts were stymied by patent infringement lawsuits, one brought against it in the United States District Court for East Texas by Invitrogen Corporation (the Invitrogen Litigation) involving bioscience field of use, and the other threatened by Nanosys, Inc. on LED products (Nanosys, Inc. has filed a proof of claim alleging damages of $30,350,000.00).

The patent litigation prompted the Debtor's pre-petition secured lenders to cancel future advances to the Debtor under its credit facility and also saddled the Debtor with litigation costs of over $1,000,000.00. The Debtor filed in bankruptcy to protect its assets from these claims and also to obtain debtor-in-possession financing that had been committed by some of the pre-petition secured lenders.

The Debtor projects that it will need more than $3,000,000.00 from new owners or lenders over the next two (2) years to continue to operate in addition to all tax refunds and projected revenue (See, Debtor's Projections annexed hereto as Exhibit "B"). The Debtor has sought purchasers and/or investors who would be willing to pay off secured pre-petition and post-petition debt as well as fund operating losses. The Debtor estimates that at least $10,000,000.00 would be needed to pay all debts and finance further operations over the next two (2) years. The Debtor has not received any proposal for such funding despite its continuing efforts to do so.

057295/00000 Litigation 7235709v2

The Debtor-In Possession Financing of $2,700,000.00 included the New Money Term Loan up to $1,350,000.00 and the Roll-Up Loan up to $1,350,000.00 (the latter representing pre-petition secured claims that were converted into post-petition secured claims). Further, certain Debtor-In-Possession Lenders agreed to act as Backstop Lenders with respect to any shortfall in the post-petition financing arising from the failure of any pre-petition secured lender to make its pro rate share of advances under the New Money Term Loan and were paid the Equity Fee in the form of 10% of the stock in the Reorganized Debtor. The maturity date of the Priority Term Facility Agreement is March 31, 2010. If the Debtor is unable to repay the Priority Term Facility Agreement on the maturity date, it has the option to satisfy the Roll-Up Loan through the issuance of stock in the Reorganized Debtor, and to roll the New Money Term Loan into the Exit Facility that can be utilized by the Reorganized Debtor following the Effective Date of the Plan. The Final Order approving the Debtor-In-Possession Financing was entered by the Court on September 14, 2009.

The Debtor has borrowed the full amount available under the Debtor-In-Possession Financing. Accordingly, the Debtor has proposed a Plan under which the Roll-Up Lenders convert the Roll-Up Loan into 85% of the equity in the Reorganized Debtor, the pre-petition secured creditors receive 5% of the equity in the Reorganized Debtor in satisfaction of their pre-petition secured claims and the Debtor uses the Debtor-In-Possession Financing to pay $100,000.00 to unsecured creditors to be distributed *pro rata* to allowed unsecured claims. Shares will be distributed within ninety (90) days of the Effective Date and unsecured creditors will receive their payments within ninety (90) days of the Effective Date.

057295/00000 Litigation 7235709v2

All existing shares, whether common or preferred, and regardless of class, will be cancelled on the Effective Date of the Plan.

The Debtor believes that the total value of its assets is less than the amount of secured claims against it (approximately $6,000,000.00). It has been seeking a purchaser for all of its assets and has been unable to obtain any offers. Without the availability of the Exit Facility after March 31, 2010, the Debtor will be unable to operate and will have to liquidate, which would leave secured and unsecured creditors without any chance of repayment.

Accordingly, the Debtor now proposes a Plan relying on the financing from the Debtor-In-Possession Lenders under the Exit Facility to finance future operations, converting most secured claims to stock, and paying approximately 10% of the amount of the unsecured claims in a lump sum payment to unsecured creditors on the Effective Date of the Plan.

The Effective Date of the Plan shall be April 1, 2010 or the first day of the month next following the date of the Order of Confirmation.

III.

PENDING LITIGATION

At the time of the bankruptcy filing, Invitrogen had commenced a patent infringement claim in East Texas District Court against the Debtor. In addition, the Debtor is litigating and has obtained disallowance of the Nanosys, Inc. filed proof of claim in the amount of $30,350,000.00.

10

IV.

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN
## AND DESIGNATION OF IMPAIRED AND UNIMPAIRED CLASSES

A)      DEFINITION OF IMPAIRMENT

A class of claims is not impaired under the Plan if the holders of such class receive cash or other property equal to the allowed amount of its claims as of the consummation date of the Plan of Reorganization. A Class of Claims is impaired under the Plan if the members of such class do not receive cash or other property equal to the allowed amount of their claims as of the consummation date of the Plan. As is explained in more detail below, all Classes (except Class 1) of the Debtor's creditors are impaired under the Plan.

The Consummation Date, also called the Effective Date of the Plan, shall be April 1, 2010 or the first day of the month following the entry of the Bankruptcy Court Order confirming the Debtor's proposed Plan if not entered prior to April 1, 2010.

B)      PARTY RESPONSIBLE FOR MAKING PAYMENTS
        REQUIRED UNDER THE PLAN

The Debtor shall be responsible for making all distributions under the Plan.

C)      DESIGNATION OF CLASSES UNDER THE PLAN

The specific creditors and amounts under the plan are designated as follows:

CLASS 1:      Administrative Claims, Including Attorneys' Fees and Trustee's Commission

A)      ATTORNEYS' FEES

Counsel for the Debtor is Hodgson Russ LLP, 677 Broadway, Suite 301, Albany, New York, 12207. It is estimated that attorneys' fees and disbursements for the Debtor's counsel will be approximately $35,000.00, in addition to the amount of $20,000.00 sought in the Debtor's First

11

Interim Fee Application. Counsel for the Debtor-In-Possession Lenders is McNamee, Lochner, Titus & Williams, P.C., 677 Broadway, Suite 500, Albany, New York 12207. It is estimated that attorneys' fees and disbursements for the Debtor-In-Possession Lenders' counsel will be approximately $15,000.00, in addition to the amount of $37,253.50 sought in the Debtor-In-Possession Lenders' First Interim Fee Application. Attorneys' fees and disbursements for the Debtor-In-Possession Lenders' counsel were specifically authorized pursuant to the terms and conditions of the Priority Term Facility Agreement.

B)     TRUSTEE'S COMMISSIONS/UNITED STATES TRUSTEE'S FEES

In a case under Chapter 11 of the Bankruptcy Code, unless the Court appoints a trustee, the Debtor remains in possession and no trustee commissions are incurred. The Court has not appointed a trustee in this case and none is expected to be appointed. The Debtor will have to pay fees to the Office of the U.S. Trustee pursuant to the applicable fee schedule. All fees due to the U.S. Trustee will be paid prior to the Effective Date of the Plan. United States Trustee's fees are due until entry of the Final Decree and will be paid as they accrue.

CLASS 2:     Secured Claims of Debtor-in-Possession Lenders

The aggregate amount of the secured claims of the Debtor-In-Possession Lenders who are accepting stock in the Reorganized Debtor is $2,700,000.00. Pursuant to the terms of the Priority Term Facility Agreement, the Roll-Up Loan will be deemed satisfied and repaid by the issuance of 85% of the stock in the Reorganized Debtor to the Debtor-in-Possession Lenders in proportion to their respective percentage of the Roll-Up Loans as shown on Exhibit "A". Shares will be issued within ninety (90) days of the Effective Date. The New Money Term Loan will remain outstanding and will be available for use by the Reorganized Debtor.

12

CLASS 3:     Secured Claims of Pre-Petition Secured Lenders

The secured claims of the pre-petition secured lenders (approximately $2,200,000.00) will receive stock in the Reorganized Debtor equal to 5% of ownership as set forth in Exhibit "A". Shares will be issued within ninety (90) days of the Effective Date.

CLASS 4:     Claims of General Unsecured Creditors

The Debtor believes that allowed claims of unsecured creditors total approximately $1,210,000.00.     This includes an estimated claim for Invitrogen, Inc. in the amount of $200,000.00 and no allowed claim for Nanosys, Inc.  The Debtor shall pay $100,000.00 within ninety (90) days of the Effective Date of the Plan to be distributed *pro rata*.

CLASS 5:     Claims of Shareholders

All shares in the Company will be cancelled.  New shares will be issued to the Class 2 creditors and the Class 3 creditors.

## V.

## FEASIBILITY

The Debtor will fund the distribution to the general unsecured creditors from the Debtor-In-Possession Financing.  The Debtor believes that post-bankruptcy funding in excess of $3,000,000.00 will be required (See, Debtor's Projections annexed hereto as Exhibit "B").

## VI.

## LIQUIDATION ANALYSIS

The Debtor has been unable to fund a buyer or investor willing to commit funds sufficient to pay off the estimated $5,500,000.00 of pre-petition and post-petition secured claims.

13

The Debtor has been unable to sell product due to pending patent infringement claims. Accordingly, its inventory and accounts receivable have diminished value.

The Debtor is seeking a refund under a technology credit from New York State in the total amount of approximately $871,000.00. The final authorized amount of refund and the timing of payments depend upon a recently required audit by New York State and the State's financial condition to pay refunds.

The Debtor also owns stock in eBioscience, Inc., a privately held company. The Debtor's alleged sale and/or offer for sale of its semiconductor nanocrystals for biotechnology and/or life science applications triggered the Invitrogen, Inc. litigation described above. The Debtor has the right to sell the stock back to eBioscience, Inc. The Debtor assigns little current value to this stock.

The Debtor is seeking contracts and/or grants with government and state agencies. To date, no such contracts have been awarded.

VII.

EXECUTORY CONTRACTS AND LEASES

All executory contracts and leases will be assumed following confirmation.

057295/00000 Litigation 7235709v2

# VIII.

## PAYMENTS NEEDED AT CONFIRMATION

The Debtor estimates payments needed as of the Effective Date of the Plan as follows:

| | | | |
|---|---|---|---|
| a) | Balance of Debtor's Attorneys' and Debtor-In-Possession Lender's Attorneys' Fees and Disbursements: | $ 50,000.00 * | |
| b) | United States Trustees' Fees: | 5,000.00 ** | |
| c) | Aggregate of Payments due to Unsecured Claims of Non-Insiders: | 100,000.00 | |
| | TOTAL DUE: | $ 155,000.00 | |

\* To be paid as Allowed by Court
\*\* Estimated

The Debtor believes that it will have sufficient funds to make payments on the Effective Date of the Plan from the Exit Facility.

057295/00000 Litigation 7235709v2

## IX.

## OTHER PLAN PROVISIONS

### A.    AMENDMENTS TO A CONFIRMED PLAN

The Plan provides a mechanism for amendments to be made after confirmation. An individual creditor may elect to accept a modified treatment of its claim without notice or formal amendment of the Plan. However, if the Debtor seeks to change the Plan to decrease the amount due to creditors after the plan is confirmed, then it must give notice to all creditors and seek Bankruptcy Court approval for the change.

### B.    EFFECT OF CONSUMMATION OF PLAN

The Bankruptcy Code and the Plan provide that confirmation of the Plan, on the consummation date (when the Debtor has completed all acts required under the Plan and made all payments) discharges the Debtor from any further claim against it for debts existing prior to the filing of the Bankruptcy petition.

### C.    CONTINUING JURISDICTION OF BANKRUPTCY COURT

The Plan provides for the Bankruptcy Court to retain jurisdiction until there is substantial consummation of the Plan. Assuming the other conditions of 11 U.S.C. §1101(2) are satisfied, the Bankruptcy Court may find a Plan to be substantially consummated at the time the first payment is made pursuant to the Plan.

### D.    DISPUTED CLAIMS AND INTERESTS

The Plan provides a mechanism for resolving disputes concerning the amount of any Claim or Interest and for making a distribution on account of any such Claim or Interest once the dispute has been resolved.

16

If the Schedule of Assets and Liabilities or any amendment thereto filed by the Debtor with the Bankruptcy Court (the "Schedules") listed your Claim in a particular amount and with a particular or no priority and did not indicate that the amount of the Claim is disputed, then the Debtor does not intend to object to the allowance of your Claim in that particular amount. This means that, unless you have filed a proof of claim in a larger amount or some party in interest (such as the Committee or any individual Creditor or Security Holder) files an objection to your Claim and gives you notice thereof, your Claim will be allowed in time to receive the Initial Distribution and any subsequent distributions to your Class. The Debtor reserves the right under its Plan to challenge any claim.

If the Schedules indicate that your Claim is disputed, or if you filed a proof of claim in a larger amount than is listed in the Schedules, then an objection to your Claim will likely be filed. In addition, if you have filed a proof of claim seeking alleged damages arising from the Debtor's rejection of an executory contract or unexpired lease, then, if the Debtor disagrees with your Claim, it will be disputed.

Until such time as the amount of a Disputed Claim or Interest is determined, the holder of the Claim will not participate in any distributions made to other members of the same class. However, there will be set aside and reserved by the estate the property the Claimant would be entitled to receive if the Claim or Interest were allowed in the full amount sought by the Claimant. Once the amount of the Claim has been determined, whether by agreement or by a Final order of the Bankruptcy Court, this amount will form the basis for a distribution to the Claimant equal to the amount that would have been distributed if the Claim or Interest had been allowed in that amount on the Consummation Date.

057295/00000 Litigation 7235709v2

E.    "BEST INTERESTS" OF UNSECURED CREDITORS
      AND SECURITY HOLDERS

Notwithstanding acceptance of the Plan by creditors and Security Holders, in order to confirm the Plan the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes of creditors and Security Holders. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired Class of Claims and Interests a recovery which has a present value at least equal to the present value of the distribution which each such person would receive if the Debtor was instead liquidated under Chapter 7 of the Bankruptcy Code.

F.    THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST
      INTERESTS OF ALL CREDITORS AND SECURITY HOLDERS

To calculate what members of each impaired class of unsecured Claims and Interests would receive if the Debtor was liquidated, the Bankruptcy Court must first determine the dollar amount that would be generated from the liquidation of the Debtor ("Liquidation Fund"). The Liquidation Fund of the Debtor would consist of the proceeds from the disposition of the assets of the Debtor, augmented by the cash held by the Debtor, if any, and recoveries on actions against third parties, if any. The Liquidation Fund would then be reduced by the costs of the liquidation. The Debtor's cost of liquidation under Chapter 7 would likely include the fees of a trustee, as well as those of counsel and other professionals that might be retained by the Debtor's trustee, selling expenses, any unpaid Chapter 11 expenses and any claims arising by reason of the trustee's rejection of obligation incurred by the Debtor during the pendency of the Plan.

THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

18

G.     ACCEPTANCE AND CONFIRMATION

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified creditor and Security Holders Interests in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of the Bankruptcy Code (see discussion below); (iii) that the Debtor has proposed the Plan in good faith; and (iv) that the Debtor has made disclosures concerning the Plan which are adequate and include information concerning all payments made or promised in connection with the Plan and the Chapter 11 cases. The Debtor believes that all of these conditions have been or will be met.

The Bankruptcy Code also requires, as a condition precedent to confirmation, that the Plan be accepted by the requisite votes of each Class of Creditors and Security Holders voting as separate classes and hence the Bankruptcy Court must find, in order to confirm the Plan, that the Plan has been duly accepted. In addition, the Bankruptcy Court must find that the Plan is feasible and that the Plan is in the "best interest" of all Creditors and Security Holders. Thus, even if Creditors and Security Holders of the Debtor accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of the Debtor's Creditors and Security Holders before it can confirm the Plan.

H.     ACCEPTANCE

Acceptance of the Plan requires that each impaired Class of Claims or Interests accepts the Plan, with certain exceptions hereinafter discussed in §VIII (I) entitled "Non-acceptance and 'Cramdown'". A Class is impaired if the legal, equitable or contractual rights attaching to the

057295/00000 Litigation 7235709v2

Claims or Interests of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Classes of Claims and Interests that are not impaired under a plan are deemed to have accepted the plan. Acceptances of the Plan are being solicited only from those persons who hold Claims or Interests of impaired Classes. Under the proposed Plan, all Classes are impaired.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds (2/3) in dollar amount and a majority in number of Claims of that Class, but for that purpose, only those Claims, the holders of which actually vote to accept or reject the Plan, are counted. The Bankruptcy Code defines acceptance of a plan by a Class of Interests as acceptance by the holders of two-thirds (2/3) in number of shares or other equity securities, but for that purpose only those shares or other equity securities, the holders of which actually vote to accept or reject the Plan, are counted. Put another way the Claims and Interests of Creditors and Security Holders, respectively, who fail to vote on the Plan are not counted in the determination of whether the Plan has been accepted or rejected.

I.     NON-ACCEPTANCE AND "CRAMDOWN"

The Bankruptcy Code contains provisions for confirmation of a Plan even if that plan is not accepted by all impaired Classes, as long as at least one impaired class of claims has accepted the plan. These "cramdown" provisions for confirmation of a Plan despite the non-acceptance of one or more impaired classes of claims or interest, are set forth in §1129(b) of the Bankruptcy Code.

Pursuant to §1129(b)(2)(B), if a class of unsecured claims rejects a Plan it may still be confirmed so long as the plan provides that (i) each holder of a Claim included in the rejecting Class will receive or retain on account of that Claim property which has a value, as of the

057295/00000 Litigation 7235709v2

Effective Date of the Plan, equal to the allowed amount of such Claim, or (ii) a holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain on account of such junior Claim or Interest any property at all.

Pursuant to §1129(b)(2)(C), if a Class of Interests rejects a Plan, such Plan may still be confirmed so long as it provides that (i) each holder of an Interest included in the rejecting Class will receive or retain on account of that Interest property which has a value, as of the Effective Date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such Interest, or (ii) the holder of any Interest that is junior to the Interest of such Class will not receive or retain under the Plan on account of such junior Interest any property at all. Since all secured creditors are being paid in full, and the payment to unsecured creditors are substantially more then they would receive in liquidation, the Debtor believes that its Plan complies with the requirements of 11 U.S.C. §1129(b)(2)(C). All equity classes are deemed to have rejected.

## X.

## EFFECTS OF CONFIRMATION

Because the Debtor will continue to operate after confirmation of the Plan, confirmation of the Debtor's Plan will discharge all pre-petition debts of the Debtor whether or not a proof of claim has been filed by a creditor and even if a particular creditor does not vote for the Plan (*See*, 11 U.S.C. §1141). The confirmation of the Plan will vest all of the property of the estate in the Debtor. The contents of a confirmed Plan are binding on any creditor or general partner of the Debtor.

057295/00000 Litigation 7235709v2

## XI.

## CONCLUSION

The Debtor, Evident Technologies, Inc., therefore recommends approval of its Plan because the Plan proposes payment in full of all allowed secured claims and a dividend to unsecured creditors.

DATED:     February 22, 2010

HODGSON RUSS LLP
Attorneys for Debtor

By:_____
     RICHARD L. WEISZ
677 Broadway, Suite 301
Albany, New York 12207
(518) 465-2333

EVIDENT TECHNOLOGIES, INC.

By:_____
     CLINTON BALLINGER
     CHIEF EXECUTIVE OFFICER

057295/00000 Litigation 7235709v2